## TAYLOR *et al. v.* WARREN *et al.*

No. 8916.   OCTOBER 13, 1932.

*Burch & Daley,* for plaintiffs in error.
*Blackshear & Blackshear* and *G. C. Bidgood,* contra.

BELL, J.   On December 8, 1919, Mrs. Mary J. Warren executed a deed to her daughter, Mrs. Nancy Taylor, conveying a tract of 100 acres of land in Laurens County.   This deed recited a consideration of $5 and natural love and affection.   It provided that the grantee should rent, crop, or work the lands according to her best judgment, but should deliver the rents, profits, and income to the grantor at the end of each year, for the use and benefit of the grantor, during her lifetime.   It was stipulated in the deed that the grantee would not sell the land during the lifetime of the grantor, without the latter's consent, and would furnish to the grantor a good, comfortable home so long as she lived.   On December 18, 1930, after Mrs. Warren and Mrs. Taylor had died, J. C. Warren and others who were among the heirs at law of Mrs. Mary J. Warren, brought a suit in equity against Dr. T. J. Taylor, the surviving husband of Mrs. Nancy Taylor, and others, constituting the heirs at law of Mrs. Taylor, praying for cancellation of the deed above referred to, upon the grounds of mental incapacity in the grantor and fraud and undue influence on the part of Mrs. Taylor and the defendants herein.   The defendants demurred to the petition both generally and specially.   The demurrers were overruled, and the defendants excepted pendente lite.   The trial resulted in a verdict in favor of the plaintiffs.   The defendants moved for a new trial, which the court refused, and they excepted.

The petition contained the following allegations as to mental incapacity: "At the time said Mrs. Mary J. Warren signed the deed above mentioned, she was a very aged woman, being about 75 years old, and was continuously, from time of signing said deed to the date of her death, in very feeble health, possessed of little memory and no will power; her mental faculties had become greatly impaired by feeble health which antedated the signing of said deed, was wholly incapable of transacting business matters, nor was she possessed of sufficient mental capability to make a clear, intelligent, and voluntary disposition of her property." A person is insane and thus incapable of making a valid contract when he or she is not possessed of mind and reason equal to a clear understanding of the nature and consequence of his or her act in making the contract. *Barlow* v. *Strange,* 120 *Ga.* 1015, 1018 (48 S. E. 344). The allegations were sufficient to show that Mrs. Warren was incapable of making the deed in question, and therefore the court did not err in overruling the general demurrer. See also *Eagan* v. *Conway,* 115 *Ga.* 130 (41 S. E. 493); *Brown* v. *Carmichael,* 149 *Ga.* 548 (101 S. E. 124). The fact that the petition may have contained no sufficient allegations of fraud or undue influence did not render the petition subject to general demurrer, if the averments were sufficient to show that the grantor was incapable of entering into the contract; and in the briefs of counsel for the plaintiffs in error there is no insistence upon any ground of special demurrer.

■ Numerous grounds of the motion for a new trial complain of the admission of testimony over objection of the defendants. These grounds were all similar in character, and a decision upon one of them will control the others. I. F. Coleman, who was sworn as a witness for the defendants, was permitted on cross-examination to testify as follows: "If she [Mrs. Warren] had accompanied some of her grandchildren twenty miles from her home on a picnic and immediately after the meal was spread on the picnic ground she disappeared, and when they found her she was a half mile from that place in the wrong road home, and stated that she was going back home, I would not say that she was not of a perfect rational and sound mind. I think anybody that would do that, there would be something wrong with them mentally." This testimony was admitted over objection that the witness, "not being an expert, could

not testify to facts related from a hypothetical question based upon testimony given by other witnesses in the trial of said case," and that the testimony was therefore "inadmissible and irrelevant, and should not have been permitted to go to the jury in the consideration of said case." The question under investigation was one of opinion. Therefore any witness was competent to testify to his opinion, upon giving his reasons therefor. Civil Code (1910), § 5874. The opinion of an expert may be given on facts proved by other witnesses. Civil Code (1910), § 5876; *Walker* v. *Fields,* 28 *Ga.* 237 (2). This does not mean that a witness may be asked for his opinion upon the *testimony* of other witnesses or upon the case on trial. The rule is that he may give his opinion on facts which, though proved by other witnesses, are stated hypothetically in the interrogation of the witness. *Flanagan* v. *State,* 106 *Ga.* 109 (32 S. E. 80).

In *Southern Mutual Insurance Co.* v. *Hudson,* 113 *Ga.* 434, 439 (38 S. E. 964), it was held that "the opinion of a non-expert witness may be admitted where the question is one of opinion, when he gives his reasons therefor, on precisely the same principle as that which allows the opinion of an expert to be admitted without his reasons; and rulings in relation to questions propounded to the one are applicable to the other." On authority of this ruling it is contended by the defendants in error that where the question is one of opinion, a non-expert witness may give an opinion upon a hypothetical statement as an expert is permitted to do. It is unnecessary to determine whether this contention would be correct as a general proposition. The witness on direct examination had given an opinion to the effect that the grantor was sane, and was now being subjected to cross-examination upon that issue. The interrogation as indicated was a legitimate test of the fairness and correctness of his direct testimony, and the court did not err in admitting the evidence as thus elicited on cross-examination. Nor was it error to admit similar testimony from other witnesses over like objections. 22 C. J. 722, § 813; Pecos &c. Ry. Co. *v.* Porter (Tex. Civ. App.), 156 S. W. 267; Dominick *v.* Randolph, 124 Ala. 557 (27 So. 481). There was no attempt to require any witness to review the testimony given by other witnesses in the case.

■ One of the grounds of the motion for a new trial was based upon the fact that a member of the jury trying the case was a non-

resident of the county. This ground was supported by evidence to establish the non-residence of the juror as alleged, and also to show that the defendants did not know of this fact until after verdict and were not at fault. The non-residence of the juror rendered him incompetent propter defectum and constituted ground for challenge, but, in the absence of challenge, was not cause for a new trial, no matter when discovered. *Henderson* v. *Fox,* 83 *Ga.* 233 (7) (9 S. E. 839); *Jordan* v. *State,* 119 *Ga.* 443 (7) (46 S. E. 679); *Lumpkin* v. *State,* 152 *Ga.* 229 (8) (109 S. E. 664).

■ Upon a careful examination of the evidence, this court can not hold as a matter of law that there was no sufficient proof that Mrs. Warren was mentally incapable of executing the deed under consideration. It is true that several if not all of the witnesses who testified as to her mental deficiency spoke, by inference at least, of lucid intervals. A number of witnesses testified altogether against insanity. The surviving husband of the grantee accounted for the execution of the deed, and by his testimony it was a rational and voluntary act on the part of the grantor. The jury, however, were not absolutely bound by the testimony of this witness, nor by the opinion of any witness on either side. Many facts and circumstances were stated by the witnesses to show a condition of insanity beginning some time before the execution of the deed in question, and continuing to the death of the grantor. One witness testified that she did not have "any more mental capacity than a ten-year-old child." Another witness, a merchant whose store was frequented by the grantor, testified in effect, though not in terms, that from various transactions with her in his store he considered her an insane person. The conduct of Mrs. Warren after the execution of the deed was generally inconsistent therewith. Although she made provision therein for a home with the grantee for the remainder of her life, the evidence authorized the inference that she was at the time living with another daughter and continued so to do for about five years. During this time she often spoke of the property as being still subject to her disposition, and stated that she expected it to go to a particular grandchild. She lived for more than ten years after the execution of this deed, and, so far as appears, she did not during all of this time make any reference to having executed it. From all of the evidence, the jury were authorized to find that a condition of permanent insanity existed

prior to the execution of the deed. In *Dicken* v. *Johnson, 7 Ga.* 484 (2), it was held that if habitual insanity is proved previously to the execution of the deed, the presumption of law is that it continues to the time when the deed is executed, and the burden of proving sanity at the making of the deed is devolved upon the party seeking to uphold the deed.

The evidence authorized the verdict, and there was no error in refusing a new trial. See *Lunday* v. *Foreman,* 129 *Ga.* 595 (2) (59 S. E. 276) ; *Hartley* v. *Marietta Nursery Co.,* 138 *Ga.* 736 (2) (76 S. E. 39) ; *Gable* v. *Gable,* 130 *Ga.* 689 (4) (61 S. E. 595) ; *Parker* v. *Ballard,* 123 *Ga.* 441 (4) (51 S. E. 465).

*Judgment affirmed. All the Justices concur, except Atkinson, J., absent.*