## 56637. WILKINSON v. DAVIS.

MCMURRAY, Judge.

Despite the difference in names, this is the second appearance of this case in this court. See *Davis v. Monroe County Hospital Authority,* 137 Ga. App. 214 (223 SE2d 255). In that case there was an appeal of the first grant of a motion for new trial, and this court specifically stated that same would not be disturbed.

Davis, as plaintiff, sued Monroe County Hospital Authority and R. C. Wilkinson, d/b/a J. C. Reporting and Collection Service, and others, for "malicious use or abuse of process." By direction of the trial court the jury had found for the plaintiff against all defendants, and the court's direction provided for the liability of Monroe County Hospital Authority to be limited to $171.80 as damages. Only Wilkinson moved for judgment

notwithstanding the verdict or in the alternative for new trial, which was granted.

Wilkinson had originally obtained default judgments against two of plaintiff's employees. Whereupon their wages were garnisheed, that is, those wages allegedly in the hands of the garnishee, Ronald Davis. Davis answered, contending he had no wages in his possession. Whereupon, Wilkinson caused to be issued two summons of garnishment to the Georgia Kraft Company against the plaintiff Ronald Davis in which he swore he had reason to apprehend the loss of debts unless summons of garnishment do issue. As a result Georgia Kraft Company made certain deductions from plaintiff's settlement sheet in regard to pulpwood sales.

Plaintiff Davis then brought this action referred to by this court in *Davis v. Monroe County Hospital Authority,* 137 Ga. App. 214, supra, as one based upon "malicious use or abuse of process," against the two defendants, Wilkinson and Monroe County Hospital Authority, and two others. However, only the defendant Wilkinson remains in the case.

Plaintiff alleged he had been damaged by the wilful and malicious intention of the defendants to damage his credit rating, his business affairs and hold him up for shame and ridicule "damaging him in the sum of two thousand ($2,000.00) dollars." He averred the defendants wilfully, knowingly and maliciously caused to be deducted from the settlement sheet of the plaintiff $378.04 on account of the garnishment attached to this petition, "using summons of garnishment in a manner not intended by law, with the wilful and malicious intention to damage the credit rating of the plaintiff, and damage his business affairs and hold him up for shame and ridicule. . ."

In his answer, Wilkinson denied that he was acting for Monroe County Hospital Authority and contended that in garnisheeing the employees of the plaintiff he (the plaintiff) had admitted in open court that the amounts of garnishment were due and owing and "that he, the plaintiff, would pay said amounts. . . and said agreement was approved by the court." He otherwise denied the claim against him. The case then proceeded to trial for the

second time.

The plaintiff testified that he had been garnisheed by the defendant (Wilkinson) with reference to two of his employees who owed money. He then offered in evidence his answers filed to the garnishments in which it was alleged that these defendants in garnishment (employees) owed him more money than the amount of the garnishments, and he testified there was no settlement in which he agreed to pay these bills. He then testified that the defendant went straight to Georgia Kraft and garnisheed certain of his funds held by Georgia Kraft; that the first knowledge he had was after the deduction of the amount sued for by Wilkinson against him had been paid by Georgia Kraft, and he had not been summoned as a defendant in these garnishment proceedings. He also testified that he was in production of pulpwood for Georgia Kraft, bought equipment from them by financing it; that his feelings were injured by reason of the garnishment; that he was embarrassed by the filing of the garnishments against him and in applying for credit he had been "given the run-around on it [the credit] and they told me right there they didn't want to loan it to me"; and $378.04 had been deducted from his settlement sheet with Georgia Kraft by reason of the garnishments which were taken out without basis of any claim against him. An employee of Georgia Kraft was called as a witness with reference to loans to pulpwood producers, in particular, the plaintiff. This witness testified that he did not recall ever turning him down for the financing of equipment because of the garnishments but that this would have had an influence upon him in the event such producers kept having garnishments filed against them.

The defendant Wilkinson testified with reference to his activities in the collecting business and in particular the attempt to collect the indebtedness of the two employees of the plaintiff, identifying the garnishment papers served on the plaintiff, as well as the answers filed thereto. He then testified that there was an agreement made orally in open court, and that the answers to the garnishments were false since the employees admitted they had not missed a payday, and these answers were dismissed in the Justice of the Peace Court by the justice

of the peace upon defendant's request. He also testified that counsel for plaintiff at that time stated: "If I came up with proof that those people owed that money, that Mr. Davis would pay it off, and that was the agreement that, that was the statement that was made in the Court by Mr. Freeman [plaintiff's counsel]." He then admitted that as a result of what happened in the courtroom he filed garnishments against Mr. Davis at Georgia Kraft contending he had "received a default judgment against Mr. Davis." Later on in the trial he testified that he had gone back to the Justice of the Peace Court and "obtained a default judgment against Mr. Davis." Objection to this testimony was made that the default judgment itself would be the highest and best evidence, and the objection was sustained. On cross examination the defendant as a witness admitted that he did not have anything in writing on any kind of default judgment. He was unable to prove the judgments against the employees by default or a default judgment against the plaintiff as having been obtained in the Justice of the Peace Court, although he testified that same had occurred. The justice of the peace was then called as a witness, who testified that he remembered holding court and that the employees, the plaintiff, the defendant, and the plaintiff's counsel were all present in the courtroom, but that he had not dismissed these garnishments and that answers had been filed to them. However, he testified both the plaintiff and his counsel had agreed that the debt should be paid. He did recall, however, that he had rendered a judgment against the two employees, and had on some date (not remembered) rendered a default judgment against Mr. Davis.

At the close of all the evidence plaintiff moved for directed verdict, and the trial court replied that it would instruct the jury as to the motion. By direction of the trial court the jury returned a verdict in favor of the plaintiff in the sum of $206.20 (apparently $378.04 less the amount paid by the defendant hospital authority). In addition, the jury (not by direction of the court) returned a verdict for "$1,000 for special or actual damages" and "the sum of $10,000 [as] punitive damages." Whereupon a judgment was entered against the defendant in the amount of

$1,206.20 actual damages and the additional sum of $10,000 punitive damages.

Again the defendant moved for judgment notwithstanding the verdict or in the alternative for new trial. After a hearing of this combined motion same was overruled, and defendant appeals. *Held:*

1. In proving his damages, plaintiff showed the exact amount illegally deducted from his settlement statement where there existed no indebtedness in favor of the garnisher, that is, $378.04 (less $171.80 paid as liquidated damages by another defendant), and the trial court directed the verdict as to this amount, or $206.20. The highest and best evidence that a default judgment had been granted against the plaintiff would have been the judgment of the court, properly certified, or the issuance of a fi. fa. See *Shiver v. Bentley,* 78 Ga. 537 (3 SE 770); *Walton v. Mitchell,* 11 Ga. App. 159, 160 (74 SE 1006). Since the testimony that a default judgment had been granted against plaintiff was disallowed by the court on objection thereto, the trial court did not err in directing the verdict as to the balance of the liquidated claim in the amount of $206.20.

All other injuries shown by the plaintiff were "to the peace, happiness or feelings" of the plaintiff in which no measure of damages is prescribed, "except the enlightened conscience of impartial jurors." See Code § 105-2003. The plaintiff showed evidence of embarrassment, wounded feelings, and damaged business relations although no liquid amount of damages was shown. The award of $10,000 as punitive damages could have been exemplary damages, "to deter the wrongdoer from repeating the trespass," and not for the wounded feelings of the plaintiff so as to involve double damages. See Code § 105-2002, and in this connection the cases of *Blanchard v. Westview Cemetery, Inc.,* 124 Ga. App. 195, 199-211 (183 SE2d 399), s.c., 228 Ga. 461 (186 SE2d 92), s.c., 133 Ga. App. 262, 265 (3), 269-272 (211 SE2d 135), s.c., 234 Ga. 540 (216 SE2d 776).

Since there was evidence to support the findings of the jury, the trial court did not err in denying the motion for judgment notwithstanding the verdict or the motion for new trial as to the general grounds, even though no

liquidated amount was proven for loss of his credit rating.

2. The principal distinction between "malicious abuse of process" and "malicious use of process" is that malicious abuse lies for "wrongfully and unlawfully using legally and properly issued process for a purpose the law never intended it to effect, while the latter action lies for maliciously suing out civil process without probable cause." *Morris v. Lester Laboratories, Inc.,* 147 Ga. App. 833, 834. See *Goodwin Agency, Inc. v. Chesser,* 131 Ga. App. 686, 688 (2) (206 SE2d 568); *W. Ga. Pulpwood &c. Co. v. Stephens,* 128 Ga. App. 864, 868 (1) (198 SE2d 420); *Ellis v. Millen Hotel Co.,* 192 Ga. 66, 69 (14 SE2d 565); *Dugas v. Darden,* 65 Ga. App. 394, 396 (15 SE2d 901). The garnishment proceeding was sworn out to collect funds of the plaintiff where no judgment was obtained and which debt plaintiff did not owe, that is, to use the "legally and properly issued process [garnishment proceeding] for a purpose the law never intended it to effect [collect a non-existent debt]. . ." See *Morris v. Lester Laboratories, Inc.,* supra. True, it was used as the law intended, to collect money, but there was no debt by reason of a lack of a judgment against the plaintiff. Indeed, the justice of the peace here had no records and only testified from memory.

3. While the evidence in this action (garnishment proceeding) showed that it was probably maliciously used without probable cause, nevertheless, the proceeding did not terminate in favor of the plaintiff who testified he knew nothing about the action until his funds were deducted from his settlement statement. Accordingly, the case was one of malicious abuse of process and not one of malicious use of process, as no judgment could be awarded for malicious use of process. See *Braswell v. Mason Kominers Tire Co.,* 56 Ga. App. 593 (193 SE 357); *Davison-Paxon Co. v. Walker,* 174 Ga. 532 (1) (163 SE 212); *Cooper v. Public Fin. Corp.,* 146 Ga. App. 250, 255 (2) (246 SE2d 684).

4. Having considered each and every one of defendant's enumerations of error, many of which have been argued and considered above together, we find no merit in any of them.

*Judgment affirmed. Quillian, P. J., and Webb, J., concur.*

SUBMITTED OCTOBER 16, 1978 — DECIDED JANUARY 15, 1979.

*W. Ashley Hawkins,* for appellant.

*Ham, Mills & Freeman, W. Franklin Freeman, Jr.,* for appellee.